IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| HEALTH ALAN CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 3:21-CV-02-KFP |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks review of the Social Security Administration's decision denying his application for disability and Disability Insurance Benefits. The undersigned, having considered the record, briefs, applicable regulations, and caselaw, finds the decision of the Commissioner of Social Security must be AFFIRMED.

**I.   STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's factual findings, the Court must affirm if the

decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. PROCEDURAL BACKGROUND

Plaintiff was 34 years old when the Administrative Law Judge rendered a decision finding him not disabled. R. 23, 25. Plaintiff alleged disability due to anxiety, depression, ADD, PTSD, borderline personality disorder, and dissociative identity disorder. R. 15, 196. His initial application was denied, and he requested a hearing before an ALJ. R. 12, 60. After a hearing, the ALJ issued a decision finding Plaintiff not disabled. R. 25, 30. The Appeals Council declined review, making the Commissioner's final decision ripe for judicial review. R. 1–3; *see* 42 U.S.C. § 405(g).

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff had severe impairments of ADHD, PTSD, bipolar disorder, dissociative identity disorder, and anxiety disorder but that he did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17–18. He then found that Plaintiff has the residual functional capacity to perform a full range of work with certain non-exertional limitations.[1] R. 20.

After considering Plaintiff's experience as a telephone operator, customer service representative, and manager, the ALJ determined that Plaintiff had no relevant past work experience. R. 23. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were other jobs in the national economy that Plaintiff could

---

[1] Specifically, the ALJ determined that Plaintiff can only perform jobs that are classified as unskilled, considered low stress, and require only "occasional interaction with coworkers and supervisors, but would be limited to rare/incidental contact with customers or members of the general public." R. 20.

perform, including a vehicle cleaner, mail clerk, or ticket counter. R. 24. The ALJ ultimately concluded that Plaintiff had not been under a disability from the alleged onset date, March 24, 2018, through the date last insured, September 30, 2018. R. 25.

## IV.  DISCUSSION

On appeal, Plaintiff raises two issues: (1) the RFC is not supported by substantial evidence; and (2) the decision in this case is constitutionally defective. The Court disagrees.

### A.  **Substantial evidence supports the RFC.**

The RFC is a determination the ALJ makes based on "all the relevant medical and other evidence" in the record, including both medical and nonmedical. 20 C.F.R. §§ 416.945(a)(1), 416.945(a)(3). It is "used to determine [one's] capability of performing various designated levels of work[.]" *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021) (citing 20 C.F.R. § 416.967).

As long as an ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[,]'" the RFC is supported by substantial evidence. *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *7 (M.D. Ala. Sept. 29, 2021) (citing *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id.* In fact, under the current regulations, "an ALJ is to give a treating physician's opinions no deference and instead must weigh medical opinions based on their persuasiveness." *Jones v. Soc. Sec. Admin.*, No. 16-17163, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022) (citing 20 C.F.R. § 404.1520c).

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ ignored probative evidence, mischaracterized evidence, and based the RFC on his own lay opinion. Doc. 17 at 12. In his RFC determination, the ALJ explained that he considered Plaintiff's testimony in light of treatment records from his primary care physician, Dr. Mitchell Galishoff, and his treating psychologist, Dr. Tom Lawry. R. 22. The ALJ considered Plaintiff's testimony that he "left his home only for doctor's appointments[,] . . . experienced 2 to 3 panic attacks per week[,] . . . experienced racing heart, shortness of breath, and shaking[,] . . . woke up from nightmares 4 nights per week[,] . . . took 2 to 3 naps per day[,]" needed reminders to care for himself, did not perform any chores, and "is unable to work due to his impairments." R. 20–21, 44–47, 49–53. Still, the ALJ determined that Plaintiff's "reported symptoms and limitations appeared to be out of proportion to the clinical findings[.]" R. 21. The parties' briefs largely focus on whether the ALJ properly considered the opinions of Drs. Galishoff and Lawry. The Court finds that he did.

### 1. The ALJ properly discounted Dr. Galishoff's opinions.

In February 2019, Dr. Galishoff concluded that Plaintiff could not engage in gainful employment because he "cannot keep pace and concentration, nor work with other people and he has a high absence rate because of the severe depression." R. 22, 565. In January 2020, Dr. Galishoff opined that Plaintiff had "no limitation in understanding, remembering, and carrying out simple instructions[,] . . . [a] moderate limitation in understanding, remembering, and carrying out detailed instructions[,] . . . a slight limitation in making judgements[,]" an extreme limitation in interacting with others and handling normal work pressures, and a marked limitation in responding appropriately to changes. R. 21, 573–74.

4

The ALJ found these opinions unpersuasive because they are not chronologically relevant, Dr. Galishoff is not a mental health professional, and his opinions contradict other evidence. R. 22–23.

          a.      **Dr. Galishoff's opinions do not pertain to the relevant time period.**

A plaintiff seeking disability insurance benefits must show he is disabled within the relevant time period—that is, between the onset date and date last insured. *See Quick v. Comm'r of Soc. Sec.*, 403 F. App'x 381, 383–84 (11th Cir. 2010); *Persons v. Saul*, No. 2:19-CV-01680-CLS, 2020 WL 4428750, at *1 (N.D. Ala. July 31, 2020) ("Because the ALJ's decision was made after the date last insured, the inquiry was relevant only to the period between claimant's onset date . . . and her date last insured[.]") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Evidence dated outside that time period that does not relate to the relevant time period "cannot be used to demonstrate that [the plaintiff] was disabled during the relevant period." *Persons*, 2020 WL 4428750, at *2; *see also Whitton v. Comm'r, Soc. Sec. Admin.*, 643 F. App'x 842, 847 (11th Cir. 2016) (holding that substantial evidence supported ALJ's decision to not give weight to opinion that was written after the date last insured "and did not address the severity of [plaintiff's] conditions during the relevant time period").

Here, the relevant time period is March 24, 2018 through September 30, 2018. R. 15, 25. Dr. Galishoff's opinions are dated February 7, 2019, and January 9, 2020—outside of the relevant time period. R. 565, 575. Further, these opinions do not refer to or specify

5

that they apply to the relevant time period. As such, the ALJ properly discounted Dr. Galishoff's opinions. *Persons*, 2020 WL 4428750, at *2; *Whitton*, 643 F. App'x at 847.

### b. Dr. Galishoff is not a mental health professional.

An ALJ may properly afford little weight to a primary care physician's opinion regarding a plaintiff's mental health where the physician is not a mental health professional. *Machuat v. Acting Comm'r of Soc. Sec.*, 773 F. App'x 490, 492–93 (11th Cir. 2019); 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight [and ALJ] will give the source's medical opinion."). Indeed, an ALJ "generally give[s] more weight to the medical opinion of a specialist[.]" § 404.1527(c)(5).

Here, the ALJ discounted Dr. Galishoff's opinions in part because "Dr. Galishoff is not a mental health provider." R. 22. As a primary care provider, the ALJ was justified in awarding little weight to Dr. Galishoff's opinions regarding Plaintiff's mental health limitations. *See Machuat*, 773 F. App'x at 492–93; § 404.1527(c)(2)(ii), (5). Thus, the ALJ rightly discredited Dr. Galishoff's opinions on this basis.

### c. Dr. Galishoff's opinions contradict other evidence in the record.

The ALJ recognized that while Dr. Galishoff's "records showed some reported worsening of depression or bipolar symptoms[,] . . . his records also continually revealed no suicidal ideation [or] flashbacks[,]" a stable mood with "no excessive sadness, crying spells, suicidal ideation, vegetative symptoms, new or worsening anxiety symptoms," and a normal mood and affect. R. 21. Upon review, the Court agrees that Dr. Galishoff's records

from the relevant time period contradict his ultimate determinations. R. 642, 645–46, 660–61, 663–64; *see Dyer v. Barnart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (ALJ is not required to discuss every piece of evidence as long as the court can surmise he considered the plaintiff's medical condition as a whole).

The ALJ also discounted Dr. Galishoff's opinions because they conflict with records from Dr. Lawry, a mental health professional. R. 22. Again, the current regulations allow an ALJ to give more credit to a specialist than a non-specialist. § 404.1527(c)(5). The ALJ found Dr. Galishoff's opinions unpersuasive because they conflict with Dr. Lawry's findings of moderate symptoms and functional impairment. R. 22. "The more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion." § 404.1527(c)(4). Thus, the ALJ was justified in awarding Dr. Galishoff's opinions because they conflict with his own findings and those of Dr. Lawry.

Plaintiff argues that the ALJ ignored probative evidence, including Plaintiff's worsening depression and bipolar symptoms. Doc. 17 at 8–12. While there may be some evidence in this record that could support a finding favorable to Plaintiff, the ALJ was not required to discuss every piece of evidence. *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-01053-JHE, 2022 WL 860190, at *6 (N.D. Ala. Mar. 22, 2022) (citing *Dyer*, 395 F.3d at 1211). However, the ALJ did discuss this evidence: "Dr. Galishoff's records showed some reported worsening of depression or bipolar symptoms at times[.]" R. 22. Thus, the ALJ did not ignore the evidence but, even if he had, his decision still indicates that he considered Plaintiff's condition as a whole. *McCarver*, 2022 WL 860190, at *6.

Accordingly, the ALJ's decision to afford Dr. Galishoff's opinions little weight is supported by substantial evidence.

### 2. The ALJ properly discounted Dr. Lawry's opinions.

In July 2017, Dr. Lawry opined that Plaintiff "had [a] moderate limitation in understanding, remembering and carrying out detailed instructions; [a] marked limitation in interacting with others, and [an] extreme limitation responding appropriately to work pressures and changes in a routine work setting." R. 22, 246–49. In January 2020, Dr. Lawry also concluded that he believed Plaintiff could not maintain employment due to his agoraphobia, rage, and PTSD. R. 23, 844–45. However, the ALJ did not find the opinions persuasive because they are not chronologically relevant, Dr. Lawry determined issues reserved for the Commissioner, and his opinions are inconsistent with the evidence. R. 22.

#### a. Dr. Lawry's opinions do not pertain to the relevant time period.

As discussed above, Plaintiff had to show that he was disabled during the relevant time period—March 24, 2018, to September 30, 2018. *See Persons*, 2020 WL 4428740, at *1 (citing *Moore*, 405 F.3d at 1211); *Quick*, 403 F. App'x at 383. Dr. Lawry's opinions are from July 2017 and January 2020—before and after the relevant time period. R. 246–49, 844–45. There are no indicators that these opinions pertain to the relevant time period. Therefore, these opinions cannot be used to establish disability, and the ALJ properly discounted them.

### b. Dr. Lawry's determination regarding Plaintiff's disability was reserved for the Commissioner.

Opinions that a plaintiff is disabled are reserved to the Commissioner "because they are dispositive of a case[.]" § 404.1527(d)(1). In other words, "[a] statement by a medical source that [a plaintiff is] 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled." *Id.*; *see also Romeo v. Comm'r of Soc. Sec.*, 686 F. App'x 731, 733 (11th Cir. 2017) (Affirming ALJ's decision to discount physicians' opinions in part because "[a] medical opinion that a claimant is disabled constitutes an opinion on an issue reserved to the Commissioner and is not controlling.") (citing 20 C.F.R. § 404.1527(d)(1)).

Dr. Lawry's January 2020 conclusion that Plaintiff "cannot maintain gainful employment" and "social security disability benefits should be awarded" constitutes a conclusion reserved to the Commissioner. R. 844–45. Therefore, the ALJ's decision to disregard this opinion was proper under the law. § 404.1527(d)(1); *Romeo*, 686 F. App'x at 733.

### c. Dr. Lawry's opinions contradict other evidence.

Dr. Lawry's notes, which are difficult to decipher, indicate that Plaintiff's symptoms were worse on only two occasions, were generally worse when Plaintiff was in public and when he had the urge to drink, and on one occasion Plaintiff's symptoms were considered severe. R. 22, 255–58. Additionally, Dr. Lawry opined that Plaintiff could not maintain gainful employment. R. 22, 844–45.

9

As an initial matter, the ALJ recognized that those findings "were all based on upon subjective reports of the claimant and were not corroborated by clinical observations or an assessment of mental status[.]"[2] R. 21–22. "Importantly, an ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner v. Kijakazi*, No. 1:19-CV-774-KFP, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. § 404.1529(a)).

Further, the ALJ recognized that these opinions were inconsistent with other evidence in the record. Specifically, the ALJ found that Dr. Lawry's opinions conflicted with his own findings of "moderate symptoms and moderate functional impairment[.]" R. 22, 254, 256, 258–59. Further, the ALJ concluded that "these opinions are also not consistent with the examination findings of claimant's primary care physician noting claimant to consistently be alert and oriented, with a normal mood/affect and normal sensorium[.]" R. 22–23, 646, 665. As discussed above, an ALJ may give less weight to opinions that are inconsistent with the record as a whole. § 404.1527(c)(4). Thus, the ALJ "has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached[.]'" *Nichols*, 2021 WL 4476658, at *7 (citing *Eaton*, 180 F. Supp. at 1055).

Plaintiff points to other evidence in the record that supports a more restrictive RFC and argues that "no 'reasonable mind' could conclude, and no logical bridge exists . . . to a conclusion that Plaintiff is capable of working an 8-hour day[.]" Doc. 17 at 12. In support,

---

[2] Dr. Lawry did not perform a mental evaluation. R. 21.

Plaintiff cites records that detail his mental impairments, including anxiety and PTSD stemming from former abuse. Doc. 17 at 9–11. However, at this stage, the Court cannot reweigh the evidence—its only task is to determine whether substantial evidence exists. *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. While it is true that some evidence exists supporting a more restrictive RFC, because substantial evidence supports the decision, the Court must affirm. *See Jacks v. Comm'r of Soc. Sec. Admin*, 688 F. App'x 814, 819–20 (11th Cir. 2017).

> **B.  Any alleged constitutional deficiency does not invalidate Plaintiff's disability determination.**

Plaintiff alleges that reversal is required because the Social Security Agency's structure was unconstitutional. Doc. 17 at 13. "[I]nsulation from removal by an accountable President is enough to render the agency's structure unconstitutional." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2204–09 (2020) (holding that an agency's structure violated the separation of powers because the director was only removable by the president for cause). However, an agency's actions are not per se void by nature of its unconstitutional structure. *See id.* at 2208 ("It has long been settled that 'one section of a statute may be repugnant to the Constitution without rendering the whole act void.'") (citation omitted); *Collins v. Yellen*, 141 S. Ct. 1761, 1787–99, n.23 (2021) ("Settled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to undertake other responsibilities of his office[.]") (citation omitted).

Under 42 U.S.C. § 902(a)(3), the Commissioner of Social Security was removable by the President only for cause. *See Fleagle v. Kijakazi*, No. 2:21-CV-00357-AKK, 2022

WL 2873395, at *6 (N.D. Ala. July 21, 2022). Assuming this created a constitutional defect in the removal provision,[3] it does not render the SSA's actions void; however, it might require a court to remand an unfavorable disability determination where the requisite harm can be shown. *See Smith v. Kijakazi*, No. 7:21-CV-00059-AKK, 2022 WL 1063640, at *8–9 (N.D. Ala. Apr. 8, 2022); *Fleagle*, 2022 WL 2873395, at *6.[4] In *Smith*, a social security claimant challenged the ALJ's decision on separation-of-power grounds, alleging that her disability determination was invalid because Commissioner Saul delegated authority to the ALJ and Appeals Council in her case and issued the applicable regulations. 2022 WL 1063640, at *9. While the court recognized the potential unconstitutionality of § 902(a)(3), it reasoned that the plaintiff suffered no harm requiring reversal because she failed to "supply evidence that Commissioner Saul or President Biden played a role in her claim, even if President Biden's regulatory philosophy or policy goals indeed stood at odds with those of the Commissioner he removed." *Id.* (citation omitted). Ultimately, the court refused to conclude that the removal provision required the mass of SSA decisions to be reversed. *Id.* (citing *Collins*, 141 S. Ct. at 1802) (Kagan, E., concurring)).

Plaintiff argues that his disability determination was constitutionally defective and harmed him. Doc. 17 at 14, Doc. 26 at 3. For the reasons set forth below, the Court disagrees.

---

[3] The parties stipulate that Commissioner Saul's position under § 902(a)(3) was unconstitutional because it limited the President's authority to remove Commissioner Saul without cause.
[4] While both *Smith* and *Fleagle* are non-binding authority, because they involve similar claims, the Court finds their analyses persuasive.

### 1. Even if the agency's structure was constitutionally defective, its decisions were not automatically void.

Commissioner Saul served as the Commissioner of the SSA when Plaintiff's disability claims were adjudicated and appealed.[5] Doc. 17 at 13. After the ALJ issued his decision but before the Appeals Council declined review, the Supreme Court issued its decision in *Seila Law*. *See* 140 S. Ct. at 2183; Doc. 17 at 13.

The Court need not decide whether § 902(a)(3) is constitutionally defective under *Seila Law* because, even if it is, the SSA nevertheless had the authority to operate. *Smith*, 2022 WL 1063640, at *8 (citing *Seila Law, LLC*, 140 S. Ct. at 2192). Plaintiff argues that the SSA's unconstitutionality polluted his case because (1) the ALJ derived his authority from Commissioner Saul, (2) the Appeals Council derived its authority from Commissioner Saul, and (3) his determination was based on regulations Commissioner Saul issued. Doc. 17 at 13–15.

However, the Court's decision in *Seila Law* "[did] not strip the Director of the power to undertake the other responsibilities of his office." *Collins*, 141 S. Ct. at 1788, n.23. Indeed, "then-Commissioner Saul's purportedly unconstitutional removal protection did not automatically pollute the authority vested thereto[.]" *Smith*, 2022 WL 1063640, at *8. It follows that Plaintiff's disability determination is not constitutionally defective just because Commissioner Saul delegated authority to the ALJ and the Appeals Council that determined his case. *See Smith*, 2022 WL 1063640 at *8.

---

[5] Commissioner Saul was confirmed by the United States Senate on June 17, 2019, and removed by President Biden after the Supreme Court decided *Seila Law*. Doc. 17 at 13.

Likewise, Plaintiff's argument that Commissioner Saul's regulations were ineffective in his case also fails. On this issue, the Court follows the *Fleagle* court and holds that "the removal protection afforded to then-Commissioner Saul did not pollute his authority to . . . issue regulations." 2022 WL 2873395, at *6. Thus, the SSA's unconstitutionality did not automatically invalidate Plaintiff's disability determination.

### 2. Plaintiff was not harmed by the agency's unconstitutionality.

Reversal is appropriate if a plaintiff illustrates that the unconstitutional provision caused him harm. *See Collins*, 141 S. Ct. at 1788 ("Although an unconstitutional provision is never really part of the body of governing law[,] . . . it is still possible for an unconstitutional provision to inflict compensable harm."). The *Collins* Court provided two examples of this type of harm: where the President attempted to remove a Director but was prevented from doing so or where "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.*

Additionally, a plaintiff can show that the removal provision caused him harm requiring reversal if he shows that "Commissioner Saul played a specific and detrimental role in [his] claim." *Fleagle*, 2022 WL 2873395, at *6 (citations omitted); *Smith*, 2022 WL 1063640 at *9 (citations omitted). Conclusory claims that the unconstitutional agency caused a plaintiff harm do not warrant reversal. *Smith*, 2022 WL 1063640, at *9.

Plaintiff generally argues that "[t]he Biden Administration apparently recognizes this constitutional defect, as it fired Mr. Saul under the authority of *Seila Law*," and that "President Biden and the White House have publicly acknowledged" the "profound effect

14

the Commissioner of SSA has on the disability adjudication process[.]" Doc. 26. at 6. Plaintiff has not alleged any harms similar to those delineated in *Collins*. 141 S. Ct. at 1788. While the statements attributed to President Biden may indicate that his "regulatory philosophy or policy goals" stood at odds with Commissioner Saul, that is insufficient to show harm requiring reversal. *Smith*, 2022 WL 1063640, at *9

Additionally, Plaintiff has not shown that "Commissioner Saul played a specific and detrimental role in [his] claim" or otherwise caused him harm. *See Fleagle*, 2022 WL 2873395, at *6 (citations omitted). Plaintiff's reply brief sets out the following alleged harms: "(1) [Plaintiff] did not receive a constitutionally valid hearing and adjudication from the ALJ; (2) [Plaintiff] did not receive a constitutionally valid adjudication process and decision from the [Appeals Council]."[6] Doc. 26 at 3–4. Plaintiff explains that "the constitutional violation results from *the improperly appointed commissioner's delegation to the ALJ and/or AC judge*." Doc. 26 at 5 (emphasis in original). As discussed above, these arguments fail. *See Smith*, 2022 WL 1063640 at *8. Plaintiff also argues that he "was actually harmed by these actions" due to a "profound effect the Commissioner of SSA has on the disability adjudication process[.]" Doc. 26 at 6–7. These conclusory allegations do not show that Commissioner Saul played a detrimental role in Plaintiff's determination.

---

[6] In Plaintiff's brief, he argued that "[t]he government deprived this claimant of a valid administrative adjudicative process" due to Commissioner Saul's delegation of authority to the ALJ and the Appeals Council. Doc. 17 at 14. In Plaintiff's reply brief, he argues that "regarding the constitutionally illicit process before the [Appeals Council], SSA failed to respond altogether[,]" thus, waiving the issue. Doc. 26 at 4. The Court disagrees. Defendant responded by arguing that "[Plaintiff] cannot conceivably show how the President's supposed inability to remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision" and that "Plaintiff cannot conceivably show that the President's supposed inability to remove the Commissioner without cause affected the Appeals Council's denial of review of his specific claim." Doc. 22 at 11 n.7. Thus, Defendant did not waive any argument as to the impact of the Appeals Council's decision on Plaintiff's determination.

*See Fleagle*, 2022 WL 2873395, at *6 (citations omitted); *Smith*, 2022 WL 1063640, at *9 (citations omitted).

Finally, Plaintiff argues that this Court should apply the Court's holding in *Carr v. Saul*, 141 S. Ct. 1352 (2021), to presume harm and award a new hearing. Doc. 26 at 5. In *Carr*, the Supreme Court held that social security claimants were entitled to a new hearing where the applicable appointments clause was found unconstitutional. 141 S. Ct. at 1362. In support, Plaintiff cites a Third Circuit decision holding that a social security litigant "need not show direct harm or prejudice caused by an Appointment Clause violation." Doc. 26 at 5 (citing *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (3rd Cir. 2020)). Notably, that case addressed the impact of an unconstitutional *appointment clause*; this case involves an unconstitutional removal provision. Unlike cases in unconstitutional removal provisions, courts *have* found that actions taken by unconstitutionally appointed officials are invalid. *See Carr*, 141 S. Ct. at 1356. As discussed above, it is well settled that an unconstitutional removal provision does not invalidate an agency's actions. As such, Plaintiff's reasoning is inapplicable.[7]

---

[7] Defendant's response and Plaintiff's reply brief largely focus on arguments that the Defendant included to "reinforce the clear takeaway from *Collins* that Plaintiff is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers." Doc. 22 at 6. Specifically, Defendant includes "[a] variety of other legal doctrines—harmless error, de facto officer, and the rule of necessity, as well as broad prudential considerations" to which Plaintiff disagrees. Doc. 22 at 6. Because the Court can reach its decision without relying on these doctrines, it refrains from determining their applicability.

## V. CONCLUSION

For the reasons set forth above, it is ORDERED as follows:

1. The Commissioner's decision is AFFIRMED.

2. A final judgment will be entered separately.

DONE this 30th day of August, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE